NIALL P. McCARTHY (#160175)
JUSTIN T. BERGER (#250346)
**COTCHETT, PITRE & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
nmccarthy@cpmlegal.com;
jberger@cpmlegal.com

ALEXANDER G. VAN BROEK (#103891)
**LAW OFFICE OF ALEXANDER G. VAN BROEK**
1999 Harrison Street, Suite 2675
Oakland, CA 94612
Telephone: (510) 446-1922
Facsimile: (510) 446-1911
vanbroeklaw@earthlink.net

NEIL A. GOTEINER (#83524)
DOUGLAS E. DEXTER (#115868)
DEBORAH K. BARRON (#257146)
**FARELLA BRAUN & MARTEL LLP**
235 Montgomery St #3000
San Francisco, CA 94104
Telephone: (415) 954-4440
Facsimile: (415) 954-4480
ngoteiner@fbm.com; ddexter@fbm.com
dbarron@fbm.com

JOHN M. KELSON (#75462)
**LAW OFFICES OF JOHN M. KELSON**
2000 Powell Street, Suite 1425
Emeryville, CA 94608
Telephone: (510) 465-1326
Facsimile: (510) 465-0871
kelsonlaw@sbcglobal.net

THOMAS A. PISTONE (#77774)
**PISTONE & WOLDER, LLP**
2010 Main Street, Suite 900
Irvine, CA 92614-8203
Telephone: (949) 864-9660
Facsimile: (949) 622-8985
tpistone@pbwlaw.com

*Attorneys for Plaintiffs and the Class*     *Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LA PARNE and EMILE BOUARI, individually and on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MONEX DEPOSIT COMPANY, a California limited partnership; COMCO MANAGEMENT CORPORATION, a California corporation; MONEX CREDIT COMPANY, a California limited partnership; METCO MANAGEMENT CORPORATION; and Does 1 through 10, <br><br> Defendants. | Case No. SACV08-302 DOC (MLGx) <br><br> **CLASS ACTION** <br><br> **JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** <br><br> Date: November 1, 2010 <br> Time: 8:30 am <br> Ctrm: 9D <br> Judge: Honorable David O. Carter |

**LAW OFFICES**
COTCHETT,
PITRE &
McCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)

# **TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES** . . . . . . . . . . . . . . . . 1

**I.      INTRODUCTION AND SUMMARY** . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.     NATURE OF CASE AND PROCEDURAL HISTORY** . . . . . . . . . . . . . 2

    A.  Nature of Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.  Key Terms of the Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**III.    LEGAL STANDARD** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  Criteria . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.  Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.  Approval of Settlements of FLSA Claims. . . . . . . . . . . . . . . . . . . . 6

**IV.     ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.      The Settlement is Fair and Reasonable. . . . . . . . . . . . . . . . . . . . . . 6

        1.      The Standard for Preliminary Approval . . . . . . . . . . . . . . . . 6

        2.      This Settlement Falls Well Within the Range of Possible Approval. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            a.      The Settlement Resulted from Arm's-length Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            b.      The Factual Record Was Well Developed. . . . . . . . . . 8

    B.      The Proposed Notice to Class Members Is Adequate. . . . . . . . . . . 8

    C.      The Settlement Terms Left to the Court's Determination. . . . . . . . 9

        1.      Reversion Vs. Cy Pres. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            a.      Plaintiffs' Position. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            b.      Defendants' Position. . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2.      FLSA Release for Non-Participants . . . . . . . . . . . . . . . . . . 15

            a.      Plaintiffs' Position. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            b.      Defendants' Position. . . . . . . . . . . . . . . . . . . . . . . . . 16

**V. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**,
Case No. SACV08-302 DOC (MLGx)                                                                i

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Equifax Information Services LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) . . . . . . . . . . . . . 5, 6

*Alberto v. GRMI , Inc.,* 252 F.R.D. at 658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 771 n. 2 (11th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). . . . . 5, 17

*In re Airline Ticket Comm'n Antitrust Litig.,* 268 F.3d 619, 625-626 (8th Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Amino Acid Lysine Antitrust Litig.,* MDL No. 1083, 1996 U.S. Dist. Lexis 5308 at *11 (N.D. Ill. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 261 F.3d 355, 366 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re: Immune Response Secs. Litig.,* 497 F. Supp. 20 1166, 1171 (S.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kakani v. Oracle Corp.* (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 47515. . . . 15, 19

*Kuncl v. IBM Corp.,* 660 F. Supp. 2d 1246 (N.D. Okla. 2009). . . . . . . . . . . . 16, 18

*Lohman v. Duryea Borough, et al.,*  No. 08-3524, 2009 WL 2183056 (3d Cir. July 23, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McCown v. City of Fontana,* 565 F.3d 1097, 1105 (9th Cir. 2009). . . . . . . . . . . 14

*Molski v. Gleich,* 318 F.3d 937, 944 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 7

*Molski v. Gleich,* 318 F.3d 937, 944 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 5

*Newberg on Class Actions,* 4th ed., § 10.15 *et seq.* . . . . . . . . . . . . . . . . . . . . . 9, 10

*Polar Int'l Brokerage Corp. V. Reese,* 187 F.R.D. 110, 114 (S.D. N.Y. 1999) . . . 8

*Powell v. Georgia Pacific Corp.,* 119 F.3d 706. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rosenberg et al. v. IBM,* Case No. CV-06-00430-PJH (N.D. Cal.). . . . . . . . . . . 18

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                    ii

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Skelton v. General Motors Corp.*, 860 F. 2d 250, 254 n.1 (7th Cir. 1988).. . . . . . 11

*Stevens v. Safeway Inc.*, No. 05-1988, 2008 U.S. Dist. Lexis, at *12-13 (C.D. Cal., Feb 25, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Superior Beverage Co. v. Owens-Illinois, Inc.*, 827 F. Supp. 477, 478-79 (N.D. Ill. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) . . . . . . . . . . 5

*Van Gemert v. Boeing Co.*, 553 F.2d 812, 815-16 (2d Cir. 1977). . . . . . . . . . . . 11

*Van Gemert v. Boeing Co.*, 739 F.2d 730, 736-37 (2d Cir. 1984). . . . . . . . . . . . 11

*Weinberger v. Kendrick*, 698 F.2d 61, 74 (2nd Cir. 1983). . . . . . . . . . . . . . . . . . 8

*Wells Fargo Securities Litigation*, 991 F. Supp. 1193, 1195 (N.D. Cal. 1998). . . . 9

*Wright v. Linkus,* 2009 U.S. Dist. LEXIS 50881 (E.D. Cal. June 16, 2009). . . . 16, 19, 20

*Yue Zhou v. Wang's Rest.*, No 05-279, 2007 U.S. Dist. Lexis, at *2-4 (N. D. Cal., Aug. 8, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATUTES**

12 Wage & Hour Cas. 2d (BNA) 1308. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

110 S. Ct. 482 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

154 Lab.L.Rep. (CCH) 35, 310. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

2 Newberg § 10.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 U.S.C. 216(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

29 U.S.C. § 251(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

493 U.S. at 173. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

FLSA's § 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**OTHER AUTHORITIES**

*Manual for Complex Litigation (Fourth)* § 21.632 (2004) . . . . . . . . . . . . . . . . 5-7

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                          iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY

Plaintiffs[1/] in this class action lawsuit, individually and as representatives for the class members, and the Monex Defendants[2/] seek preliminary approval of a settlement of seventy-eight thousand, seven hundred eighty-six dollars ($78,786.00) in benefits to the class.  This settlement would completely resolve Plaintiffs' claims against the Monex Defendants.

The settlement warrants preliminary approval by the Court.  "To determine whether preliminary approval is appropriate, the settlement only need be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *See Acosta v. Equifax Information Services LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007).

The parties reached a settlement after lengthy negotiations over the course of the litigation.  These included a formal mediation session with Hon. William J. Cahill (Ret.) and numerous settlement discussions outside of formal mediation.  Careful consideration has led counsel and the parties to conclude that the interests of the class and of the defendants are best served by settling this lawsuit so as to avoid the risks, cost, delays and uncertainty of further litigation.

The parties therefore respectfully request that this Court:  (1) enter an order preliminarily approving the Stipulation of Class Action Settlement (the "Agreement") filed herewith as Exhibit A to the Declaration of Justin T. Berger ("Berger Dec."), including a proposed draft of the Class Notice; (2) set a schedule for a hearing on the Final Approval of the settlement and Plaintiffs' applications for attorneys' fees and costs, and Enhancement Payments, if any; (3) determine the

---

[1]    Thomas La Parne and Emile Bouari.

[2]    Monex Deposit Company, Comco Management Corporation, Monex Credit Company and Metco Management Corporation.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                          1

scope of the release as described in the Agreement; (4) determine whether the unclaimed portion of the net Settlement Amount shall revert to Monex or be distributed as a *cy pres* award to the Red Cross; (5) approve the mailing of class notice; and (6) enter an order prohibiting class members from filing any new actions asserting claims against the Monex Defendants similar to those presented in the litigation and which would otherwise constitute Released Claims under this Agreement until the Court's Judgment becomes Final.

## II.   NATURE OF CASE AND PROCEDURAL HISTORY

### A.  Nature of Case

This wage and hour collective and class action was brought by Plaintiffs who were employed by one of the Defendants in positions referred to in this litigation as Account Representatives.  Plaintiffs alleged that Monex failed to pay overtime premiums, and that they were not reimbursed for business purchases necessary to their jobs and that Monex engaged in unfair business practices.  The Defendants deny all liability and deny that they engaged in any wrongdoing.  Monex maintains that they paid all plaintiffs and class members in accordance with applicable federal and state laws.

### B.  Procedural History

The original complaint was filed on March 18, 2008.  After conferring with Defendants, Plaintiffs agreed to drop a conversion claim, and filed the First Amended Class Action and Collective Action Complaint on May 22, 2008.  This is the operative complaint.  Defendants filed their Answer on May 27, 2008.  The case is assigned to United States District Judge David O. Carter.

Both parties have propounded and responded to initial sets of interrogatories and document requests.  Plaintiffs moved for conditional FLSA certification on February 6, 2009.  On March 9, 2009, Judge Carter granted conditional FLSA class certification.  On April 10, 2009, the Court approved Plaintiffs' Proposed Notice to a conditional FLSA class numbering 276 former

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                           2

1  and current Monex ARs.  The Court certified a Rule 23 class on December 22,
2  2009.

3       Extensive discovery was undertaken in the litigation in preparation for trial.
4  Both parties produced data and documents as well as exchanging written
5  discovery.  Additionally, the parties also took a total of 14 depositions, including
6  the named Plaintiffs, 3 absent class members, and 5 management or executive
7  level employees of Monex.

8       The parties also briefed and argued multiple dispositive motions, including
9  Defendants' motion for summary adjudication establishing that Monex Deposit
10 Company is a "retail establishment" under Section 7(i) of the Fair Labor Standards
11 Act ("FLSA").

12      The parties also engaged in a formal mediation session.  This mediation was
13 conducted by Hon. William J. Cahill (Ret.).  The parties participated in extensive
14 discussions within and outside this session which have been adversarial, non-
15 collusive and at arm's length, at all times.

16  **C.  Key Terms of the Settlement**

17      The signed settlement agreement is attached Exhibit A to the Berger
18 Declaration.  The following are the key provisions:

19  a.   Within 30 days of the Notice Approval Date, Monex shall deposit
20        $78,786.00 into an escrow account.  Interest will accrue for the benefit of
21        the Class from the date of entry of the Judgment and, assuming the
22        Settlement Effective Date occurs, shall be allocated to the Net Settlement
23        Amount, and the potential settlement amounts for each individual
24        Participating Claimant shall be re-calculated accordingly.  Any interest
25        accrued prior to the Court's entry of Judgment shall belong to Monex.  The
26        $78,786.00 is the Gross Settlement Amount

27  b.   The Gross Settlement Amount shall be available to pay the Class
28        Representative enhancement payments; the Reasonable Address

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                    3

Verification Measures; and, for Participating Claimants pursuant to the terms of this agreement.  Up to $4,500.00 total shall be available for the Class Representatives as enhancements, subject to court approval. Up to $400 total shall be available for Address Verification Measures.  The remainder of the Gross Settlement Amount shall be referred to as the Net Settlement Amount.

c.   The Gross Settlement Amount shall not be used to pay any portion of the attorneys' fees and costs which may be awarded by the court.  Attorneys' fees as awarded by the court shall be paid by Monex to Cotchett, Pitre & McCarthy.  Cotchett, Pitre & McCarthy shall allocate fees and costs among Class Counsel.

d.   The Parties shall determine each Participating Claimants Share of the Net Settlement Amount by using "Settlement Percentage Figures."  The Net Settlement Amount shall be divided into an "Overtime Portion" and a "Headset Portion."  The Overtime Portion will consist of 59.58% of the Net Settlement Amount and the Headset Portion will consist of 40.42% of the Net Settlement Amount.  Each Participating Claimant will receive a 1/379th share of the Headset Portion.  Each Participating Claimant will receive a share of the Overtime Portion equal to the percentage figure shown for the Claimant in Exhibit B to the Agreement.

e.   If all Class members become Participating Claimants, Monex will pay 100% of the Net Settlement Amount to Class Members.  If fewer than 100% of the Class Members become Participating Claimants then Monex will pay less than the total Net Settlement Amount to all Participating Claimants.

f.   Monex will provide Class Counsel with actual calculations of Overtime Shares for two sample Class members and a declaration stating that Monex calculated the dollar figures listed on Exhibit B using the same calculations as the examples for all Class Members.

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                          4

g.    Any portion of the Net Settlement Amount unclaimed by Participating Claimants or by opt outs shall either revert to Monex or be paid to the Red Cross, as determined by the Court.

## III.    LEGAL STANDARD

### A.  Criteria

Rule 23(e) of the Federal Rules of Civil Procedure (hereinafter "Rule(s)") provides that settlement of claims of a certified class is subject to the court's approval.  In the Ninth Circuit, settlement of class actions is generally favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("overriding public interest in settling and quieting litigation," especially in class actions).

### B.  Procedure

Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto v. GRMI , Inc.*, 252 F.R.D. at 658.  At the first stage - the present stage in this litigation - the court preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) (summarizing "preliminary fairness review").  At the first stage, the court determines only whether the proposed settlement falls within the "range of possible approval." *Molski v. Gleich*, 318 F.3d 937, 944 (9th Cir. 2003); see also *Manual for Complex Litigation (Fourth)* § 21.632 at 320, citing *In re Amino Acid Lysine Antitrust Litig.*, MDL No. 1083, 1996 U.S. Dist. Lexis 5308 at *11 (N.D. Ill. 1996).

Stage two is the final fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit objections to the proposed settlement or to opt out of it. *Alberto*, 252 F.R.D. at 659

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                    5

1  (citations omitted).

2  ### C.  Approval of Settlements of FLSA Claims

3  The standard for approving a proposed settlement of FLSA claims "is

4  similar to that used in evaluating settlements under Rule 23(e):" "the district

5  court's role . . . 'must be limited to the extent necessary to reach a reasoned

6  judgment that the agreement is not the product of fraud or overreaching by, or

7  collusion between, the negotiating parties, and that the settlement, taken as a

8  whole, is fair, reasonable and adequate to all concerned.'" *Stevens v. Safeway Inc.*,

9  No. 05-1988, 2008 U.S. Dist. Lexis, at *12-13 (C.D. Cal., Feb 25, 2008); *see also*

10  *Yue Zhou v. Wang's Rest.*, No 05-279, 2007 U.S. Dist. Lexis, at *2-4 (N. D. Cal.,

11  Aug. 8, 2007).

12  ## IV.  ARGUMENT

13  ### A.  The Settlement is Fair and Reasonable

14  #### 1.  The Standard for Preliminary Approval

15  As discussed above, in addition to determining whether the proposed Class

16  and Collective Group satisfy the criteria of Federal Rules of Civil Procedure 23(a)

17  and 23(b), and the FLSA, in approving a settlement, the Court must also determine

18  whether the proposed settlement terms are fair to the class as a whole, reasonable,

19  and adequate.  The *Manual For Complex Litigation*, Fourth (2004) § 21.62 at 315-

20  318 ("Manual"), lists several factors the court may weigh in determining whether a

21  settlement is fair, reasonable and adequate, and summarizes the inquiry as follows:

22  > Fairness calls for a comparative analysis of the treatment of class members

23  > vis-à-vis each other and vis-à-vis similar individuals with similar claims

24  > who are not in the class.  Reasonableness depends on an analysis of the

25  > class allegations and claims and the responsiveness of the settlement to

26  > those claims.  Adequacy of the settlement involves a comparison of the

27  > relief granted relative to what class members might have obtained without

28  > using the class action process.

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                    6

Id., § 21.62 at 315.  As this Court stated in *Acosta*:

> Courts should consider some or all of the following factors in determining if a settlement is fair:  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement.

*Acosta,* 243 F.R.D. at 386 (citing cases).  These considerations can be summarized as raising the question of "whether the interests of the class are better served by the settlement than by further litigation." *See Manual*, § 21.61 at 309.

At the preliminary approval stage, however, courts do not make a final determination of fairness, adequacy, and reasonableness.  Instead, as stated by the Court:

> To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.

*Acosta*, 243 F.R.D. at 386 (citing cases).  The question for the Court is whether the proposed settlement falls within the "range of possible approval," and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising Class Members of the proposed settlement.  *Molski v. Gleich*, 318 F.3d 937, 944 (9th Cir. 2003); *see also Manual for Complex Litigation* (Fourth) § 21.632 at 320, citing *In re Amino Acid Lysine Antitrust Litig.*, MDL No. 1083, 1996 U.S. Dist. Lexis 5308, at *11 (N.D. Ill. 1996).

*/ / /*

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                    7

2. **This Settlement Falls Well Within the Range of Possible Approval**

    a. **The Settlement Resulted from Arm's-length Negotiations**

There is a presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *See 2 Newberg On Class Actions*, § 11.41 at 90 (4th ed. 2002) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2nd Cir. 1983)); *see also In re: Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

Such is the case here.  As discussed above, the parties reached settlement after extensive negotiations both as part of structured mediation proceedings and independent discussions, and only after more than two years of hard-fought litigation.  These negotiations included extensive exchange of significant amounts of relevant information and data.  Experienced counsel for Plaintiffs and Defendants negotiated the settlement.  Accordingly, the settlement is entitled to an initial presumption of fairness.

    b. **The Factual Record Was Well Developed**

Prior to settlement, the parties engaged "in sufficient investigation of the facts to enable the court to intelligibly make an appraisal." *Polar Int'l Brokerage Corp. V. Reese*, 187 F.R.D. 110, 114 (S.D. N.Y. 1999) (internal quotations omitted).  As detailed above, prior to reaching the proposed settlement, the parties exchanged significant amounts of information. The parties also took 14 depositions and Plaintiffs' counsel interviewed numerous class members.  Based on this factual investigation, and their vast collective experience, counsel for both parties were well prepared to negotiate and enter into the proposed settlement.

**B.   The Proposed Notice to Class Members Is Adequate**

The proposed class notice, attached to the Settlement Agreement as Exhibit A, constitutes valid, due and sufficient notice to the Class, constitutes the best

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)

8

1  notice practicable under the circumstances and fully complies with the

2  requirements of due process.

### C. The Settlement Terms Left to the Court's Determination

4  There are two settlement terms that the Parties agreed were appropriate for

5  determination by the Court at the preliminary approval stage.  These are:  (1)

6  whether any unclaimed portion of the Net Settlement Amount should revert to

7  Monex or be given as a *cy pres* award to the Red Cross, Monex's preferred

8  charity; and (2) whether class members who file neither a claim nor an exclusion

9  form will nonetheless release their claims under the FLSA.  The Parties' respective

10  positions with respect to these issues are, briefly, as follows:

### 1. Reversion Vs. Cy Pres

### a. Plaintiffs' Position

13  Federal courts have broad discretionary powers for distributing unclaimed

14  class action funds.  A court may use its discretion to (a) direct that any unclaimed

15  funds revert to the defendant, (b) direct that they be paid to the state under the

16  abandoned property statutes, or (c) direct that the funds be distributed to a *cy pres*

17  recipient for a purpose as near as possible to the legitimate objectives underlying

18  the lawsuit, the interests of the class members, and the interests of those similarly

19  situated.  *See Newberg on Class Actions*, 4th ed., § 10.15 *et seq.*; *In re Airline*

20  *Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 625-626 (8th Cir. 2001).

21  In determining the appropriateness of a *cy pres* distribution, the Court

22  considers numerous factors.  Those factors include (1) to whom does the residue

23  belong, (2) whether it would it be practicable to distribute the residue to its

24  owners, and (3) if not, who is an appropriate alternate recipient.  *Wells Fargo*

25  *Securities Litigation*, 991 F. Supp. 1193, 1195 (N.D. Cal. 1998).  "In these cases,

26  the court, guided by the parties' original purposes, directs that the unclaimed funds

27  be distributed 'for the indirect prospective benefit of the class.'" *Powell v.*

28  *Georgia Pacific Corp.*, 119 F.3d 703, 706 (citing Newberg and Conte, *Newberg*

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                          9

1  *on Class Actions*, § 10.17 at 10-41).

2      In the present case, the parties were unable to agree on the distribution of

3  any residual funds that may remain after a distribution to the class members is

4  completed.  Plaintiffs request that the Court mandate *cy pres* distribution of any

5  residual funds as the best alternative in achieving the legitimate objectives of this

6  lawsuit, the interests of the class members, the interests of those similarly situated,

7  and the general public.  The money belongs to the individuals whom Monex failed

8  to pay their full wages.  Indeed, the overtime component of the settlement amount

9  is based on Monex's own calculations, based on its own phone records, of the

10 amount by which it underpaid its employees under California law.

11     While the present case lacks an obvious charitable cause related to the

12 action to support with the funds, this does not bar a charitable donation.  "In recent

13 years, the doctrine appears to have become more flexible…. While use of funds

14 for purposes closely related to their origin is still the best *cy pres* application, the

15 doctrine of *cy pres* and courts' broad equitable powers now permit use of funds for

16 other public interest purposes by educational, charitable, and other public service

17 organizations."  *Superior Beverage Co. v. Owens-Illinois, Inc.*, 827 F. Supp. 477,

18 478-79 (N.D. Ill. 1993) (collecting cases).  Therefore, the Red Cross is an

19 appropriate *cy pres* recipient for any unclaimed funds.  Red Cross was selected by

20 Monex, and Plaintiffs concur with that selection.

21     *Cy pres* distribution will also help ensure that Monex encourages – or at the

22 very least refrains from discouraging – its current employees' participation in the

23 settlement.  If the unclaimed funds revert to Monex, Monex will have an incentive

24 to discourage its current employees from participating in the lawsuit.

25

26

27

28 / / /

⊛
LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                    10

### b. **Defendants' Position**

Monex submits that these unclaimed funds should revert to Monex.[1]   There is no reason that this Court should treat these funds as anything other than a conventional reversionary fund.[2]   Reversionary settlements to defendants are one of several commonly accepted methods for dealing with unclaimed funds in settlement.  Newberg § 10.15 at fn. 1 (collecting cases).  Indeed, many of the leading cases discussing class action fee awards involved reversionary settlements.[3]   Even where the defendant's liability to the class has been proven, any unclaimed portion of the judgment amount may revert to the defendant.  *See*, *e.g.*, *Van Gemert v. Boeing Co.*, 739 F.2d 730, 736-37 (2d Cir. 1984); *Van Gemert v. Boeing Co.*, 553 F.2d 812, 815-16 (2d Cir. 1977); *see also*, 2 Newberg § 10.20 at 10-52.  These decisions  reason that the equitable interest in the unclaimed funds belongs to the class members who have not claimed, and that class members who have claimed are no more entitled to those funds than is the defendant.

There is no reason here to deviate from that principle.  Plaintiffs' only point is a vague and speculative snipe that Defendants could somehow interfere with the claims process were the fund to be reversionary.  They ignore several dispositive facts demonstrating that Plaintiffs' counsel actually believes that Monex will not interfere.  First, Monex has expressly agreed not to do so, and has agreed to substantial and repetitive mailing notice procedures to maximize the chances that

---

[1] In a settlement context, subject to court approval, parties have flexibility in deterring how unclaimed balance of class recovery should be distributed.  2 H. Newberg and A. Conte, Newberg on Class Actions (4th ed. 2002) (hereinafter "Newberg") § 10.15.

[2] If the Court, however, chooses the cy pres route, Monex's (unopposed) choice of the Red Cross should determine the disposition.  *See* Joint Stipulation of Class Action Settlement, (Doc. 173).

[3] *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 n. 2 (11th Cir. 1991); *Skelton v. General Motors Corp.*, 860 F. 2d 250, 254 n.1 (7th Cir. 1988); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (discussing the various alternatives used by courts for distributing such funds).

the class will know about the fund and will file claims.  *See* Joint. Stip. Settlement, pg. 15 ¶ 4.1- 4.10, 4.11.  Second, Plaintiffs' counsel are obviously not worried in the least about either Monex's integrity or the integrity of the process – *Plaintiffs' counsel bargained for Monex to be in charge of the claims process instead of going to a third party claims administrator.*   Third, were Plaintiffs truly concerned about Monex interfering, Plaintiffs would have gone the independent administrator route, asked for some sort of remedy for any Monex interference, and also bargained for a monitoring process.  They did not. If  Plaintiffs' had any doubts about Monex's integrity, but nonetheless bargained for Monex's administration, that carelessness would be another big reason to reduce Plaintiffs' attorneys fees for disregarding their duties to the class.

Further, under the facts of this case, it is only reasonable and fair that the reversion goes to Monex.  All class members conceivably having any claim will be paid in full.  And the 6% opt in to the FLSA class result presumptively demonstrates little class interest in having Monex pay anything to the class or to a charity.

In addition, Plaintiffs' counsel hardly have standing to divert the reversion to a charity.  Plaintiffs' counsel have already burdened Monex with totally unnecessary legal fees while attempting to mulct Monex through a dubious suit driven by dishonest class representatives.  There was strong evidence that early on class counsel knew that the vast majority of class members rejected Plaintiffs' counsels' theories and class representatives' description of working conditions at Monex.  Low interest in the litigation was apparent when only 20 out of over 315 former and current employees opted in to Plaintiffs' federal Fair Labor Standards Act class.  Counsel was also on notice from their own expert reports and from

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                    12

common sense that overtime and meal break damages were small and limited.[4/]

Second, counsel knew, or should have spotted, serious warning signs that their class representatives were neither typical of the class, nor at all credible. Thomas La Parne and Emile Bourari had early on in their February 6, 2009 class certification declarations verifiably grossly exaggerated their own work habits, and specifically their hours at work.[5/]  For example, named plaintiff Thomas LaParne declared that he engaged in 4 to 25 transactions per day.  La Parne Decl. ISO Plf. Mtn. Class Cert FLSA ¶9 (Doc. 25).  Sales data, however, shows that he actually only averaged 2.06 transactions per day, and no trades on 25% of all days.  Def. Opp. to Plf. Mot. Class Cert Rule 23 (Doc. 65), Crandall Decl. ¶48, Ex. 12 (Doc. 77).  Like La Parne, named plaintiff Emile Bouari grossly overstated his

---

[4]  In deposition, Taylor admitted that under his calculations, which were flawed and overestimated damages, only approximately 7% of paychecks fell below the exemption threshold — not surprising given that ARs averaged earnings of $6,541 to $13,681 per month over the years in question. *See* Taylor Depo. at 211:1-11, attached as Ex. F to Barron Decl. ISO Def. Opp. To Plf. Mtn. for Class Cert. Rule 23 (Doc. 62), and Crandall Decl. ¶36, Ex. 8 (Doc. 77), attached to Def. MPA Opp. to Plf. Mtn. for Class Cert. Rule 23 (Doc. 76).  And Taylor admitted that even 7% was an overestimate because his fixed weekly hours method of calculation failed to account for the lower number of work days in some calendar months, as well as absences from work such as vacation, sick leave, or holidays – which greatly reduced the amount of paychecks at issue.  *See* Taylor Depo. at 100:5-12; 107:13-108:1 attached as above as Ex. F to Barron Decl. ISO Def. Opp. To Plf. Mtn. for Class Cert. Rule 23 (Doc. 62); Crandall Decl. ¶¶10, 11, 39-42, Ex. 10-11, attached as above to Def. MPA Opp. to Class Cert Rule 23 (Doc 76).

[5]  In addition, although La Parne expressed high confidence in both the accuracy of his declaration, his declaration testimony was inaccurate and was contradicted by trade, phone, building access and other records. (All citations attached to Def. MPA Opp. to Class Cert Rule 23 (Doc. 76).  La Parne Depo. at 29:9-16 attached as Ex. D to Barron Decl. ISO Def. Opp. To Plf. Mtn. for Class Cert. Rule 23 (Doc. 62); Crandall Decl. ¶49, Ex. 12 (Doc. 77).  And although La Parne claimed he had a vivid memory of arriving at 7:00 am and working on average until 6:00 pm, (La Parne Depo. at 166:17-167:2, 79:3-80:12) attached as Ex. D to Barron Decl. ISO Def. Opp. To Plf. Mtn. for Class Cert. Rule 23 (Doc. 62), phone and building access records indicate that La Parne was in the office an average of eight hours per day, including breaks.  Crandall Decl., Ex. 12.  He also grossly exaggerated his phone time.  He testified in his declaration and deposition that he was "confident" he was on the phones at least between 5 and 7.5 hours a day, but then admitted he could account for at most 3.5 hours a day using the phone systems.  Even that amount was an exaggeration.  La Parne testified that he averaged 1.5 hours per day on the PDS system but he actually only averaged 20 minutes per day, and 4.8 days per month, with some months of no usage at all.  La Parne Depo. at 286:9-25 attached as Ex. D to Barron Decl. ISO Def. Opp. To Plf. Mtn. for Class Cert. Rule 23 (Doc. 62); Crandall Decl. ¶50, Ex. 13-14.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                    13

transaction activity levels.[6]  Bouari Decl. ¶12 (Doc. 26); Def. Opp to Plf. Mot.
Class Cert Rule 23 (Doc. 65), Crandall Decl. ¶49, Ex. 12 (Doc. 77); Bouari Depo.
at 133:16-139:21, 244:7-264:13 (attached as Ex. B to Barron Decl. ISO Def. Opp.
To Plf. Mtn. for Class Cert. Rule 23 (Doc. 62)).  Plaintiffs' counsel had early
access to transaction records and phone data for the named Plaintiffs yet
apparently failed to check their testimony against the facts.

Class counsel could have easily confirmed with minimal due diligence the
tinyness of potential damages and that class representative declarations were on
their face not credible.[7]  That was clearly Plaintiffs' counsel duty since they used
La Parne and Bourari's class certification declarations to argue that other Monex
Account Representatives worked the same gross exaggerated hours as La Parne
and Bouari.  *See* LaParne Decl. ISO Plf. Mtn. Class Cert FLSA ¶9 (Doc. 25);
Bouari Decl.ISO Plf. Mtn. Class Cert FLSA ¶ 12 (Doc. 26).  Yet, Plaintiffs'
counsel continued to drive up litigation costs.  And only when Plaintiffs' counsel
realized that they could not intimidate Monex did class counsel drop their strike
suit $22 million demand to $78,000.  On these facts alone, it is as appropriate that
the unclaimed fund balance revert to Defendants, as it is inappropriate for
Plaintiffs' counsel to suggest cy pres.[8]

---

[6] In addition, while Bouari claims that he worked an average of 11 hours per day,
Bouari Decl. ¶11, phone records indicate that he averaged less than 7.5 hours at
work, without even taking breaks into consideration.  Crandall Decl. ¶49, Ex. 12.
And while Bouari claims he skipped 3 meal breaks per week, records indicate he
skipped only about one meal break every four weeks.  *Id*.  Finally, while Bouari
claims to have worked 3 of 4 Saturdays, the records demonstrate that he worked
on average 1.2 Saturdays per month.  *Id*.

[7] Judge Selna recently reported in a published decision that La Parne went so far as
to assist a con artist who Judge Selna found attempted to extort money from
Monex though a internet web scheme.  *See, Monex Deposit Co. v. Gilliam*, 680
F.Supp.2d 1148, 1157 -1158 (C.D.Cal. 2010).

[8]  *See, McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. 2009)
(referencing proposed settlement agreements when determining reasonableness of
fees); *Lohman v. Duryea Borough, et al*., No. 08-3524, 2009 WL 2183056  (3d
Cir. July 23, 2009)  (affirming the District Court's reduction of an attorney's fees
based on unusually limited success where the plaintiff rejected a settlement offer).

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**,
Case No. SACV08-302 DOC (MLGx)                                          14

## 2. FLSA Release for Non-Participants

### a. Plaintiffs' Position

Monex seeks to release the FLSA claims of individuals who submit no response – neither a claim form, nor an exclusion form – to the class notice. Plaintiffs agree that such class members may be deemed to have released their state wage and hour claims.  FLSA claims, however, can only be released for those who have affirmatively opted-in to the class.  As stated by the District Court in *Kakani v. Oracle Corp.* (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 47515; 12 Wage & Hour Cas. 2d (BNA) 1308; 154 Lab.L.Rep. (CCH) 35, 310:

> The settlement agreement would violate the Federal
> Fair Labor Standards Act. The FLSA prohibits traditional
> class actions and authorizes only an opt-in collective
> action. 29 U.S.C. 216(b). Under no circumstances can
> counsel collude to take away FLSA rights including the
> worker's right to control his or her own claim without the
> burden of having to opt out of someone else's lawsuit.
> Workers who voluntarily send in a claim form and
> affirmatively join in the action, of course, can be bound
> to a full release of all federal and state rights. But is
> unconscionable to try to take away the FLSA rights of all
> workers, whether or not they choose to join in
> affirmatively.

*Id.* at *20.

Similarly, the District Court for the Eastern District of California recently faced the same dispute as is at issue here, and sided with the plaintiffs, as follows:

> According to Defendants, the Rule 23 opt-out procedures,
> under which potential plaintiffs are bound by the terms of

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                    15

the settlement unless they affirmatively opt out, should apply to both the state law claims and to those claims arising under the FLSA. Plaintiffs disagree arguing that, while Rule 23 applies to their state law claims, the FLSA requires potential plaintiffs to opt-in to this action in order to release any claims they may have under the FLSA. The Court agrees with Plaintiffs.

*Wright v. Linkus,* 2009 U.S. Dist. LEXIS 50881 (E.D. Cal. June 16, 2009), at *3-*4.

Accordingly, Plaintiffs request that the Court mandate that those who submit neither a claim form nor an opt-out form do not release their FLSA claims.

### b.   **Defendants' Position**

Monex asserts instead that the release should include both state law and FLSA claims, such that any class member who does not timely opt out is barred from bringing any claim under state or federal law arising out of the facts alleged in this litigation, *regardless of whether they opted in to the FLSA class during the opt-in period*. The sole published case on this issue, *Kuncl v. IBM Corp.*, 660 F. Supp. 2d 1246 (N.D. Okla. 2009), which along with long-established res judicata principles, strongly support this broad release.

In *Kuncl*, the court considered the precise issue raised here:  whether a judgment (in that case, like ours, a settlement) in a hybrid state law/ FLSA overtime case barred a class member, who did not opt in to the federal class but who also failed to opt out of the Rule 23 class, from filing a subsequent individual FLSA claim arising out of the same facts alleged in the class litigation.  *Id.* at 1249-50.  The court concluded that the class member's claim was barred by res judicata and that the FLSA's § 216(b) opt-in requirement "does not create an exception to the *res judicata* doctrine." *Id.* at 1253.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                    16

It is well established res judicata doctrine that: "a judgment entered according to a class settlement can bar later claims based on the same facts as the class action claims, *even if the precluded claim could not have been presented in the class action*." *Id.* at 1252 (emphasis added); *see also, In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 366 (3d Cir. 2001) (courts without jurisdiction to hear certain claims may nevertheless release those claims as part of judgment); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (same). Thus, under ordinary res judicata analysis, FLSA claims arising out of the facts alleged in this litigation may be released, even by class members who were unable to bring an FLSA claim because they failed to timely opt in to the federal class under § 216(b). As the *Kuncl* court held, neither the language of § 216(b), nor the Congressional intent behind the statute, justifies an exception to this rule:

> No language in § 216(b) or anywhere else in the FLSA provides for such an exception. In regard to the Congressional intent, the Supreme Court found that the purposes behind the amendments to the FLSA were to "limit[] private FLSA plaintiffs to employees who asserted claims in their own right and free[] employers of the burden of representative actions." *Hoffman-La Roche, Inc.*, 493 U.S. at 173, 110 S. Ct. 482. To the extent Kuncl's argument is supported by the goal of limiting FLSA plaintiffs to those who opt-in, it is offset by the goal of reducing employers' burdens in respect to representative actions. In fact, in enacting the PPA [Portal-to-Portal Act] Congress appeared to be more concerned with protecting employers than with protecting employees. *See* 29 U.S.C. § 251(a) (stating in its declaration of policy that judicial interpretations of the FLSA had caused immense and unexpected liabilities for employers and would bring about 'financial ruin' of many employers if allowed to continue).

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                    17

*Id.* at 1254.  Thus, ordinary res judicata principles apply, and FLSA claims may be barred even if they could not have been brought in the class action.[9]  *Id.* at 1255.

Consistent with the *Kuncl* court's view, courts have approved broad releases precisely like the one urged by Monex here.  *See id.* at 1248-49 (quoting release approved by district court in underlying class action, *Rosenberg et al. v. IBM*, Case No. CV-06-00430-PJH (N.D. Cal.)).  Such releases are fair to class members, in that they make clear precisely what claims are being released so that a class member who wishes to preserve those claims may opt out, and "serve the interests of finality and conservation of judicial resources by avoiding repetitious litigation."  *Id.* at 1254.  Accordingly, Monex respectfully requests that the Court approve a broad release precluding class members who do not opt out from bringing any state or FLSA claim arising out of the facts alleged in this litigation, regardless of whether they opted in to the FLSA class during the opt-in period.[10]

---

[9] Likewise, all claims under Business and Professions Code § 17200 arising from the same set of facts alleged in this litigation may be released by class members even though, by virtue of the Court's order denying Plaintiffs' motion to modify the scheduling order and for leave to file an amended complaint, class members could not assert § 17200 claims based on federal law in this litigation.  *Kuncl*, 600 F. Supp. 2d at 1252; *In re Prudential*, *supra*, 261 F.3d at 366; *Class Plaintiffs*, *supra*, 955 F.2d at 1287.

[10] Plaintiffs' unpublished authorities do not support a different result.  Neither case offers any explanation, grounded in the language of the FLSA or the policy behind it, why the FLSA opt-in requirement creates an exception to ordinary res judicata principles.  As the *Kuncl* court held, it does not; rather even FLSA claims that could not have been brought in the class action because of the FLSA's § 216(b) opt-in requirement may be released.

Monex, however, agrees with Plaintiffs' authorities in one respect.  As Plaintiffs do not contest, there is no reason why this Court cannot establish a second "opt in" period whereby class members may, by asserting claims, effectively opt in to the federal class and thereby subject themselves to the release of federal claims.  *See Kakani v. Oracle Corp.*, 2007 U.S. Dist. Lexis 47515, at *20 (N.D. Cal. 2007) ("Workers who voluntarily send in a claim form and affirmatively join in the action, of course, can be bound to a full release of all federal and state rights.")  Thus, if this Court should conclude that only those who opt in to the FLSA class can release federal claims, Monex requests that all those class members who file claims, in addition to those who opted in to the FLSA class during the initial opt in period, be treated as opt-ins for purposes of the release.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                                18

Plaintiffs' authorities do not require otherwise. *Kakani v. Oracle Corp.* involved a proposed settlement of a large, nationwide class action, *before* class certification. 2007 WL 1793774, *7 (N.D. Cal. June 19, 2007). The court found that there were numerous problems with the poorly drafted settlement proposal[11/] and refused to approve the release because of two primary concerns which not at issue here. First, the court emphasized that the language of the release was so complicated that even the parties did not understand its scope and extent; the waiver there was not solely of FLSA claims but of, "overtime claims under 150 laws and regulations in 35 states." *Id.* *4-5. Here, the release involves only FLSA and California state law claims and does not involve any complex intra-state jurisdictional or waiver issues.

Second, the *Kahani* court explained that the notice procedures for waiver was wholly insufficient. The court found that the 35 days required for response was too much of a "tight timeline." *Id.* at *5. Specifically, the court was concerned that the limited time allowed for response meant that most class members would waive their rights inadvertently simply by missing the deadline. *Id.* at *5. The court stated, however, that "the rushed timetable [was] curable." *Id.* at n.2. At issue was not solely the waiver of claims, but the timeline and method of waiver. In the present case, notice that satisfied both the court and Plaintiffs was already sent to the class, and the notice procedures here are more substantial and set on a reasonable timeline. Under such circumstances, waiver is appropriate under res judicata principles.

*Wright v. Linkus* is in similar to *Kahan*i, involving a case with release of

---

[11] As the court explained in a latter opinion taking about the original settlement waiver: "The proposed notice was nearly incomprehensible, with its tangle of subclasses, inattention to the serious jurisdictional issues in the state-law claims, and general legalese rhetoric. Even class members who received no notice at all or received late notices because of delivery problems would lose everything and recover nothing." *Kakani v. Oracle Corp.*, 2007 WL 4570190, *1 (N.D. Cal. 2007).

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,**
Case No. SACV08-302 DOC (MLGx)                                                          19

various state claims in addition to federal claims, which was prior to class certification, and where no prior notice had been given.  *Wright v. Linkus*, 2009 U.S. Dist. LEXIS 50881 *3-*4. (E.D. Cal. June 16, 2009).

## V.  CONCLUSION

For the foregoing reasons, the parties request the Court grant conditional certification and preliminary approval of the settlement, as set for in the proposed Order submitted herewith.  As set forth in the proposed Order, the parties request that the Court set the following schedule for notice and final approval:

| November 1, 2010 | Hearing on Motion for Preliminary Approval |
| --- | --- |
| November 8, 2010 | Notice Mailing Deadline (i.e., Notices sent to Class Members) |
| December 7, 2010 | Remainder Post Card to be mailed |
| December 6, 2010 | Deadline to File Application for Attorneys Fees, Costs, and Class Representative Enhancement Payments |
| December 23, 2010 | Notice Response Deadline (Claim Forms, Exclusion Forms, and Objections) |
| December 30, 2010 | Deadline to File Opposition to Application for Attorneys Fees, Costs, and Class Representative Enhancement Payments |
| January 11, 2011 | Plaintiff's Reply to Opposition to Application for Attorneys Fees, Costs, and Class Representative Enhancement Payments |
| January 24, 2011 | Deadline to File Final Approval Papers |
| February 7, 2011 | Final Settlement Approval Hearing |

Dated: September 23, 2010                    COTCHETT, PITRE & McCARTHY


                                    By:    /s/ Justin T. Berger
                                           JUSTIN T. BERGER
                                           *Attorneys for Plaintiffs and Plaintiff Class*


Dated: September 23, 2010                    FARELLA BRAUN & MARTEL LLP


                                    By:    /s/ Deborah K. Barron
                                           DEBORAH K. BARRON
                                           *Attorneys for Defendants*

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**,
Case No. SACV08-302 DOC (MLGx)                                                    21