O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS LA PARNE et. Al., <br><br>　　　　Plaintiff(s), <br><br>　　v. <br><br>MONEX DEPOSIT COMPANY et. Al., <br><br>　　　　Defendant(s). | CASE NO. SACV 08-0302 DOC (MLGx) <br><br> **O R D E R GRANTING PRELIMINARY SETTLEMENT APPROVAL** |

　　　　Before the Court is the parties' Joint Motion for Preliminary Approval of Class Action Settlement and Release ("Joint Motion") (Docket 180). The parties request that the Court (1) enter an order preliminarily approving the Settlement, including a proposed draft of the Class Notice; (2) set a schedule for a hearing on Final Approval of the Settlement, Plaintiffs' application for attorney's fees, and enhancement payments; (3) determine the scope of the release; (4) determine whether the unclaimed portion of the Net Settlement Amount shall revert to Defendant or be distributed as a *cy pres* award to the Red Cross, (5) approve the mailing of the class notice, and (6) enter an order prohibiting class members from filing any new actions

similar to those covered by the settlement until the Court's judgment becomes final.

## I. BACKGROUND

Plaintiffs represent a group of approximately 379 people who worked as account representatives for Monex Deposit Company ("Defendant") at any time between March 18, 2004 and the present. Plaintiffs allege that they worked over forty hours per week without receiving overtime pay and that Defendant failed to reimburse them for headsets purchased in relation to their job duties. As a result, Plaintiffs assert claims under the federal Fair Labor Standards Act ("FLSA") and the California Labor Code. Plaintiffs also assert that the above-described actions constitute unfair business practices in contravention of Cal. Bus. & Prof. Code § 17200.

The Court granted class certification with respect to the claims discussed above on December 22, 2009 (Docket 94).

## II. LEGAL STANDARD

Approval of a class action settlement rests in the sound discretion of the court. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). Under Federal Rule of Civil Procedure 23(e), the Settlement, when taken as a whole, must be (1) fundamentally fair, (2) adequate, and (3) reasonable to the Class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145 (M.D. Fla. 2005) (applying general class action settlement standards in FLSA case).

To determine if a settlement is fair, some or all of the following factors should be considered: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement. *See, e.g., Hanlon*, 150 F.3d at 1026; *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). In addition, judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Pacific Enterprises Securities Litigation*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

To determine whether preliminary approval is appropriate, the settlement need only be

potentially fair, as the Court will make a final determination of its adequacy at the hearing on final approval, after such time as any party has had a chance to object and/or opt out. *See Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

### III.   DISCUSSION

**Settlement Terms**

The parties propose a total settlement fund value of $78,786.00, to be known as the "Gross Settlement Amount." Joint Motion at 3. Under the proposed agreement, the following amounts shall be deducted from the Gross Settlement Amount:

- Up to $4,500 in class representative enhancement payments. Defendant planS to object to the awarding of enhancement payments. *Id*. at 3-4.
- Up to $400 for reasonable address verification measures to determine the addresses of absent class members. *Id*. at 4.

The remaining amount shall be known as the "Net Settlement Amount." The parties propose to allocate 59.58% of the Net Settlement Amount to claims arising from Defendant's alleged failure to make overtime payments ("overtime amount"), with the remaining 40.42% allocated to claims related to Defendant's alleged failure to reimburse Plaintiffs for headset purchases ("headset amount"). *Id*. The parties have identified 379 possible class members. *Id*. As such, the Joint Motion estimates that each participating class member will receive a 1/379th share of the total headset amount. *Id.* Each participating class member's share of the overtime amount shall be calculated to reflect the number of overtime hours worked by each claimant, based on Defendant's phone records. *Id*.; Exh. B to Settlement Agreement. The estimated payments to each class member from the overtime amount range from $10.65 on the low end to $4,480.24 on the high end. *Id.*

In addition, Class Counsel will petition the court for an award of attorneys' fees at the final approval hearing. Attorneys' fees will not be deducted from the Gross Settlement Amount.

Preliminarily, the settlement terms discussed above appear to be (1) fundamentally fair, (2) adequate, and (3) reasonable to the Class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1026.

3

The parties state that the terms of the Settlement resulted from lengthy, arms-length negotiations, including a formal mediation session before the Hon. William J. Cahill (Ret.) as well as numerous settlement discussions outside this formal mediation setting. Joint Motion at 8. The parties also have engaged in fairly significant discovery, including the taking of depositions and the exchange of documents. *Id.* After reviewing this discovery and considering the information exchanged during settlement negotiations, counsel for both sides, as well as the named plaintiffs, have concluded that the proposed Settlement is appropriate. Therefore, at least two of the factors identified by the Ninth Circuit as bearing on the fairness of a settlement - the amount of "investigation and discovery" conducted as well as the "experience and views of counsel" - weigh in favor of approving the Settlement. *See, e.g., Hanlon*, 150 F.3d at 1026; *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

In addition, the parties in this case have already engaged in fairly lengthy litigation over the issue of class certification, which resulted in the court granting class certification for the claims at issue in the Settlement, but in denying class certification on other claims initially asserted in Plaintiffs' Complaint. *See* Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification, December 22, 2009 (Docket 94). This suggests that the "risk, expense, complexity, and duration of further litigation" militates in favor of settlement. *See, e.g., Hanlon*, 150 F.3d at 1026. While the current Joint Motion does not contain sufficient information to allow the court to independently assess several of the other factors bearing on the fairness of a settlement, the parties have provided enough information to warrant preliminary approval.

**Scope of the Release**

The proposed Settlement states that class members who do not "opt out" of the Settlement will be bound by the Settlement's release of claims for all state-law causes of action. The Joint Motion, however, asks the Court to determine whether those who do not "opt out" of the FLSA claims will be similarly bound by the Settlement's release of FLSA claims, or whether only class members who affirmatively "opt in" to the Settlement shall be bound by its release of liability under the FLSA. Plaintiffs submit that only the absent class member who affirmatively "opt in"

4

to the Settlement should deemed to release their claims under the FLSA. Defendant, by contrast, contends that all class members who choose not to exclude themselves should be bound by the Settlement's release of liability under the FLSA.

The text of the FLSA states that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). As such, several courts have determined that it would be contrary to the statute to bind class members who do not affirmatively elect, through opt-in procedures, to participate in the FLSA suit. *See, e.g. Thompson v. Sawyer*, 678 F.2d 257, 269 (D.C. Cir. 1982); *Misra v. Decision One Mortgage Company,* 2009 WL 4581276 at *2 (C.D. Cal. 2009); *Kakani v. Oracle Corp*, 2007 WL 1793774 at *7  (N.D.Cal., 2007); *but see Kuncl v. IBM Corp.*, 660 F. Supp. 2d 1246 (N.D. Okla. 2009). As the Northern District of California reasoned in *Kakani*, "[u]nder no circumstances can counsel collude to take away FLSA rights including the worker's right to control his or her own claim without the burden of having to opt out of someone else's lawsuit." *Kakani*, 2007 WL 2221073 at *7. The Court finds the *Kakani* court's rationale persuasive.

Therefore, only class members who affirmatively "opt-in" to the Settlement should be bound by the Settlement's release of FLSA liability. The following class members will be deemed to have opted in for purposes of a release of FLSA liability: those who opted into the FLSA action during the initial opt-in period and those who file claims under the Settlement. *See id.* ("Workers who voluntarily send in a claim form and affirmatively join the action, of course, can be bound to a full release of all federal and state claims.").

**Unclaimed Settlement Funds**

If fewer than 100% of the absent class members elect to participate in the Settlement, any unclaimed funds may revert back to Defendant. Or, the parties have stipulated that the Court may employ the doctrine of *cy pres* and award the unclaimed portion to the Red Cross. The Red Cross is Defendant's preferred charity and though the Red Cross's mission does not obviously relate to the issues litigated in this case, where a related charity does not exist, courts may direct funds to organizations with general charitable aims. *See Superior Beverage Co. v.*

*Owen-Illinois, Inc.*, 827 F. Supp. 477, 478-79 (N.D. Ill. 1993) (collecting cases). Plaintiff prefers that any unclaimed settlement funds be given to the Red Cross, while Defendant asks the Court to allow the unclaimed funds to revert back to Monex

Plaintiffs contend that awarding the unclaimed funds to a charitable organization like the Red Cross will prevent Defendant from receiving a windfall benefit as a result of class members failing to claim their share of funds. Plaintiffs further argue that allowing the unclaimed funds to revert back to Defendant may cause Defendant to discourage its current employees from participating in the settlement. In response, Defendant submits that they have no intention of discouraging their current employees from filing claims. Defendant also argues that allowing the unclaimed funds to revert to Defendant is fair under the circumstances of this case. In particular, Defendant notes the relatively low initial opt-in rate to Plaintiffs' FLSA action, arguing that this relatively low opt-in rate establishes "little interest in having Monex pay anything to the class or to a charity." Joint Motion at 12.

Defendant's claim is somewhat puzzling. Relatively low interest in the settlement does not mean that Defendant should receive a windfall benefit as a result of absent class members failing to submit claims. Congress intended the FLSA to have a deterrent effect. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 710 (1945) (citing the statute's deterrent effect as grounds for invalidating a release of FLSA liablity signed by an employee). Requiring Defendant to pay the full amount of the settlement fund serves this deterrent goal. Plaintiffs contend that the Gross Settlement Amount was derived from Defendant's own calculations, based on its phone records, regarding the amount of money it failed to pay its employees. Whether or not this is true, the Gross Settlement Amount consists of an amount that Defendant, after arms length negotiations, voluntarily decided to pay in order to settle this lawsuit. There is no reason not to require Defendant to actually pay this sum of money.

Accordingly, the Court ORDERS that any residual funds be distributed to the Red Cross.

**Class Notice**

The proposed class notice includes a description of the absent class members as well as

information pertaining to the pending settlement.[1]  The notice also sets forth a forty-five (45) day time limit for responding to the notice.  The notice identifies the options available to the class members as follows: (1) claim your share of money under the settlement, (2) object to the settlement, (3) do nothing or (4) exclude yourself from the settlement.  Revised Proposed Class Notice at 3-4 (Docket 183).  The proposed notice then informs class members of the date of the final approval hearing and instructs them on their right to attend.  *Id.* at 7.  A claim form and an exclusion form accompany the notice, along with a warning that class members may not submit both forms.  Class members are instructed that submitting both a claim form and an exclusion form will be construed as submitting only a claim form.  *Id.* at 5.  The notice also informs class members that Plaintiffs counsel will move the Court for a reasonable amount of attorneys fees.

The Court finds the proposed class notice clear and sufficiently detailed; it merits approval.

**IV.    DISPOSITION**

For the foregoing reasons, the Court hereby

1.      GRANTS preliminary approval of the Settlement and revised proposed class notice.

2.      ORDERS that the Scope of Release with respect to FLSA liability extend only to class members who "opt in" to the Settlement

3.      ORDERS that the unclaimed portion of the Net Settlement Amount be distributed as a cy pres award to the Red Cross.

---

[1] The parties submitted a revised proposed class notice on November 22, 2010 in order to address several deficiencies identified by the Court with respect the previous proposed notice (Docket 183).  The Court discussed the deficiencies in the previous proposed notice at the preliminary approval hearing on November 16, 2010.  The problems with the previous proposed notice concerned, first, the fact that the previous notice failed to sufficiently alert class members that failing to respond to the notice of settlement would result in a release of all state law claims against Defendants.  The previous notice also referenced attorneys fees approaching $450,000 – a grossly disproportionate amount given the total settlement value in this case.

1    5.    ORDERS that class members are prohibited from filing any new actions asserting
2 claims covered by the release of liability under the proposed Settlement, until the Court's
3 approval of the Settlement becomes final.
4    6.    ORDERS that a hearing on final approval be set for February 28, 2011 at 8:30 a.m.

8 IT IS SO ORDERED.
9 DATED: November 29, 2010

*David O. Carter*
DAVID O. CARTER
United States District Judge

8